UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIDGET RAFTIS,

                         Plaintiff,

v.                                                    5:17-CV-0514
                                                      (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                              OF COUNSEL:

BOND, MCDONALD LAW FIRM                   MARK MCDONALD, ESQ.
  Counsel for Plaintiff
91 Genesee St.
Geneva, NY 14456

U.S. SOCIAL SECURITY ADMIN.               FERGUS KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 3, 4.).

Currently before the Court, in this Social Security action filed by Bridget Raftis

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 11, 14.)  For the reasons set forth

below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1984.  (T. 84.)  She received a GED.  (T. 192.)  Generally,

Plaintiff's alleged disability consists of depression, anxiety, bipolar disorder, drug

addiction, and alcohol addiction.  (T. 191.)  Her alleged disability onset date is March

15, 2014.  (*Id.*)  Her date last insured is June 30, 2016.  (T. 85.)  She previously worked

in the retail and fast food industry.  (T. 210.)

### B.    Procedural History

On May 16, 2014, Plaintiff applied for a period of Disability Insurance Benefits

("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the

Social Security Act.  (T. 84.)  Plaintiff's applications were initially denied, after which she

timely requested a hearing before an Administrative Law Judge ("the ALJ").  On May 24,

2016, Plaintiff appeared before the ALJ, Jennifer Gale Smith.  (T. 37-65.)  On June 30,

2016 ALJ Smith issued a written decision finding Plaintiff not disabled under the Social

Security Act.  (T. 17-36.)  On March 13, 2017 the Appeals Council ("AC") denied

Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 22-31.)  First, the ALJ found Plaintiff met the insured status

requirements through June 30, 2016 and Plaintiff had not engaged in substantial gainful

activity since March 15, 2014.  (T. 22.)  Second, the ALJ found Plaintiff had the severe impairments of a depressive disorder, an anxiety disorder, a personality disorder, and substance abuse disorder in remission.  (T. 23.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 23.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels.  (T. 26.)  The ALJ found Plaintiff was able to engage in simple, routine, and repetitive tasks.  (*Id.*)  The ALJ found Plaintiff was unable to work at a job that required confrontation with others, she was able to engage in occasional contact with others, including co-workers and supervisors.  (*Id.*)  The ALJ found Plaintiff could work at a low stress job which was defined as a job with occasional changes in the work setting and a job that required occasional simple judgment and occasional simple decision making.  (*Id.*)  Fifth, the ALJ determined Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 29-31.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ improperly rejected the opinion of the treating psychiatrist.  (Dkt. No. 11 at 14-26 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ improperly assessed her credibility.  (*Id.* at 26-30.)  Third, and lastly, Plaintiff argues the ALJ failed to properly develop the record.  (*Id.* at 30-31.)

### B.     Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the ALJ properly assessed the medical opinion evidence.  (Dkt. No. 14 at 9-16 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly assessed Plaintiff's subjective complaints.  (*Id.* at 16-19.)  Third, and lastly, Defendant argues the ALJ was not required to recontact the treating psychiatrist.  (*Id.* at 19-20.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.  Medical Opinion Evidence in the Record

The Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c)[1].  " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' "  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' "  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of*

---

[1]    Effective March 27, 2017, many of the regulations cited herein have been amended, as have SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

*Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at \*4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).

Treating psychiatrist, Abbas Ispahani, M.D., treated Plaintiff for her mental impairments and on June 29, 2015 completed a form titled "Evaluation of Mental Work Limitations." (T. 482-485.)[2] Dr. Ispahani indicated Plaintiff had no limitations in her ability to communicate clearly and effectively. (T. 483.) Dr. Ispahani indicated Plaintiff had "mild" limitations in her ability to: comprehend and carry out simple instructions; remember work procedures; and appropriately work in coordination with or proximity to co-workers. (T. 482-483.) The doctor indicated Plaintiff had "moderate" limitations in her ability to: interact appropriately with the general public; maintain regular attendance and be punctual within customary tolerances; concentrate and attend to simple work tasks; perform at a consistent pace; make simple work related decisions; and tolerate customary work pressures in a work setting including ordinary job goals, production requirements and demands. (T. 483-484.) When asked if Plaintiff's condition would deteriorate if she was placed under stress, the doctor answered "yes." (T. 484.) Dr. Ispahani indicated Plaintiff would be absent "about four days per month" and indicated Plaintiff would need job coaching. (T. 485.) On May 23, 2016, Dr. Ispahani completed a form indicating since his June 2015 statement, there had been "no change and the limitations continue." (T. 481.)

---

[2]     The form completed by Dr. Ispahani contained the following definitions. "Unlimited" defined as "no evidence of limitation, "mild" defined as "unable to function 1-10% of the time," moderate defined as "unable to function 11-25% of the time," and "marked" defined as "unable to function 25% or more of the time." (T. 482.) These definitions do not correspond to the Social Security Agency definitions of the terms and appear to be unique to the form.

The record also contains medical opinions provided by a consultative examiner and a non-examining State agency medical consultant.  On July 29, 2014 Jeanne Shaprio, Ph.D., conducted a psychiatric examination and provided a medical source statement.  (T. 324-328.)  Dr. Shapiro opined:

> [v]ocationally, [Plaintiff] appears to have no limitations in understanding and following simple instructions and directions.  She appears to have no limitations performing simple tasks.  She appears to have mild limitations maintaining attention and concertation for tasks.  She appears to have no limitations regarding her ability to attend to a routine and maintain a schedule.  She appears to have mild limitations regarding her ability to learn new tasks.  She appears to have moderate limitations regarding her ability to make appropriate decisions.  She appears to be moderately limited [in] her ability to consistently [] relate to and interact well with others.   There appears to be moderate limitations regarding her ability to deal with stress.

(T. 327.)

On August 8, 2014, non-examining State agency medical consultant, S. Juriga, Ph.D. reviewed the record and provided a mental RFC assessment.  (T. 79-83.)  Dr. Juriga opined Plaintiff had no understanding and memory limitations; no concentration and persistence limitations; and did have social limitations.  (T. 81.)  Dr. Juriga opined Plaintiff was "moderately limited" in her ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (*Id.*)  He opined Plaintiff was "not significantly limited" in her ability to: ask simple questions or request assistance; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (*Id.*)  Dr. Juriga noted in her evaluation that she relied on a mental status exam ("MSE") from May 28, 2014, Dr. Shapiro's examination, and Plaintiff's activities of daily living ("ADLs").  (*Id.*)

In evaluating the medical opinion evidence, the ALJ afforded Dr. Ispahani's June 2015 and May 2016 opinions "reduced weight." (T. 28.) The ALJ reasoned the limitations provided in the opinions were inconsistent with the overall evidence including Dr. Ispahani's mental status examination clinical findings. (*Id.*) The ALJ went on to state that Dr. Ispahani's "mild" and "moderate" limitations "appear to be relatively consistent with the well-supported opinions of psychologists Dr. Shapiro and Dr. Juriga." (T. 28-29.) However, the ALJ stated Dr. Ispahani's opinion, that Plaintiff was likely to deteriorate under stress, likely needs a job coach, and likely to be absent from work, were broad and speculative, and unsupported by explanation, clinical findings, and inconsistent treatment note observations. (T. 29.)

The ALJ afforded "very significant weight" to the opinions of Drs. Shapiro and Juriga due to their "expertise" and the "relative consistency of their opinions with each other and the overall evidence, including mental status examination clinical findings and [Plaintiff's] reported activities of daily living." (T. 28.)

### i.)    Treating Source

In general, Plaintiff asserts the ALJ failed to provide good reasons for the weight she afforded Dr. Ispahani's opinion and failed to consider the factors outlined in 20 C.F.R. §§ 404.1627(c) and 416.927(c). (Dkt. No. 11 at 16 [Pl.'s Mem. of Law].) Plaintiff specifically argues the ALJ failed to explicitly consider the frequency, length, nature and extent of the treatment Plaintiff received from Dr. Ispahani and other providers at Cayuga County Mental Health ("CCMH"); the ALJ did not "acknowledge the definitions" provided on the form completed by Dr. Ispahani; the ALJ inappropriately interpreted the term "stable"; evidence in the record supported Dr. Ispahani's opinion; the ALJ

improperly relied on the inconsistent opinions of the consultative doctors; and the ALJ inappropriately denied Plaintiff's claim based on her activities of daily living.  (Dkt. No. 11 at 16-26 [Pl.'s Mem. of Law].)  For the reasons stated herein, the ALJ provided good reasons for the weight she afforded Dr. Ispahani's opinion, the ALJ properly considered the factors outlined in  20 C.F.R. §§ 404.1627(c) and 416.927(c), and substantial evidence supported the ALJ's determination.

First, as stated herein, where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater, 5*12 F. App'x at 70.  The ALJ was aware of Dr. Ispahani's treatment relationship with Plaintiff and identified him as her "treating psychiatrist."  (T. 27.)  The ALJ outlined Plaintiff's mental health treatment records from CCMH, where Plaintiff received treatment from Dr. Ispahani and other providers, and the ALJ outlined treatment records from CHAD ("Confidential Help for Alcohol and Drugs") where Plaintiff received counseling.  (*Id.*)  Therefore, the ALJ was clearly aware of Dr. Ispahani's treatment relationship with Plaintiff.

Second, Plaintiff argues Dr. Ispahani's opinion was supported by the evidence in the record.  (Dkt. No. 11 at 17-20 [Pl.'s Mem. of Law].)  Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by

substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff provides a literal bullet list of evidence she contends supported Dr. Ispahani's opinion, but Plaintiff ultimately fails to show that no reasonable factfinder could have reached the ALJ's conclusion. Plaintiff is essentially asking the Court to reweigh the evidence in the record. When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court "will not reweigh the evidence presented at the administrative hearing, ... nor will it determine whether [the applicant] actually was disabled. [Rather,] [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it." *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (citing *White v. Shalala,* 823 F.Supp. 621, 623 (N.D. Ind. 1993)).

Third, the ALJ did not inappropriately interpreted notations that Plaintiff's mental status was "stable" as proof that her condition was good or that she could work. (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].) To be sure, the term stable can mean that a condition has not changed as opposed to a condition is "good." *See Kohler v. Astrue,* 546 F.3d 260, 268 (2d Cir. 2008) (citing, as an example of the ALJ's "tendency to overlook or mischaracterize relevant evidence," the ALJ's consistent interpretation of "reports that [the plaintiff's] condition has been 'stable' to mean that [the plaintiff's] condition has been good, when the term could mean only that her condition has not

changed").  Here, there is no indication that the ALJ interpreted the term "stable" as meaning Plaintiff's condition was good or that Plaintiff could work.

The ALJ relied on notations that Plaintiff's mental symptoms were "stable" in assessing Plaintiff's social functioning.  (T. 27.)  The ALJ noted Plaintiff reported difficulty interacting with the father of her child, but could interact appropriately with medical personal.  (*Id.*)  The ALJ further noted that Dr. Ispahani consistently noted Plaintiff's mental status examinations were "stable."  (*Id.*)  The ALJ properly noted the term stable, as used by Dr. Ispahani, indicated Plaintiff's mental status remained largely intact.  (T. 27, referring to T. 437-438, 466-467, 469, 487-488.)  Further, the ALJ did not reject the entirety of Dr. Ispahani's opinion based on notations that Plaintiff's mental status examinations were "stable."  The ALJ relied on notations of a stable condition as just one factor in her overall evaluation of the doctor's opinion.  Therefore, the ALJ did not improperly interpret the term "stable" and the ALJ relied on such observations as one part of her overall evaluation of limiting effects of Plaintiff's symptoms.

Fourth, although the ALJ did not specifically acknowledge in her determination the definitions provided in the form completed by Dr. Ispahani, there is no indication that the ALJ was unaware of those definition or that failure to reiterate the definition in her decision harmed Plaintiff.  The ALJ provided an accurate and thorough summary of Dr. Ispahani's treatment of Plaintiff, including his medical source statement.  (T. 27-28.)

Lastly, Plaintiff argues the ALJ improperly denied her claim based on her activities of daily living.  (Dkt. No. 11 at 25-26 [Pl.'s Mem. of Law].)  Plaintiff's argument is without merit.  In weighing Dr. Ispahani's opinion, Plaintiff's activities of daily living were one of many factors the ALJ's considered.  There is no indication from the ALJ's

decision that she misconstrued or overstated Plaintiff's activities. The ALJ did not conclude that Plaintiff's activities demonstrated an ability to work, rather, the ALJ concluded that Dr. Ispahani's opined limitations were inconsistent with Plaintiff's reported activities.

Overall, in her assessment of Dr. Ispahani's opinion, the ALJ applied the proper legal standard. The ALJ acknowledged Dr. Ispahani was Plaintiff's treating psychiatrist and summarized his treatment of Plaintiff. (T. 27; 20 C.F.R. §§ 404.1527(c)(1) and (4), 416.927(c)(1) and (4).) The ALJ reasoned portions of Dr. Ispahani's opinion were consistent with the findings and opinions of Drs. Shapiro and Juriga; however, other portions were not. (T. 28-29; 20 C.F.R. §§ 404.1527(c)(2)-(3), 416.927(c)(2)-(3).) The ALJ provided good reasons for rejecting Dr. Ispahani's opinion that Plaintiff was likely to deteriorate under stress, likely needs a job coach, and be absent from work four days per month. (T. 29.) As stated herein, the ALJ reasoned those limitations were "broad and speculative" and "unsupported by adequate explanation, cited clinical findings, or consistent treatment note observations." (*Id.*)

In addition, contrary to Plaintiff's assertion, the ALJ was not obligated to develop the record to request further explanation and clinical findings. (Dkt. No. 11 at 10, 30-31 [Pl.'s Mem. of Law].) "The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record. *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017). Where the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source. *See Janes v. Berryhill*, 710 F. App'x 33, 34 (2d

Cir. 2018) (ALJ not required to develop the record further when the record contained

evidence adequate for the ALJ to make a determination).  Here, the record contained

medical source statements from a treating provider and a consultative examiner, a

mental RFC assessment from a non-examining medical examiner, treatment notations,

and Plaintiff's testimony.  Therefore, the record before the ALJ contained sufficient

evidence to evaluate the doctor's findings.

    **ii.)**    **Consultative Medical Experts**

    Plaintiff further argues the ALJ erred in weighing the opinions of the consultative

medical examiners.  (Dkt. No. 11 at 20-21 [Pl.'s Mem. of Law].)  The Regulations

"recognize that the Commissioner's consultants are highly trained physicians with

expertise in evaluation of medical issues in disability claims who's "opinions may

constitute substantial evidence in support of residual functional capacity findings."

*Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,*

2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v.*

*Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F.

App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016).

    Plaintiff asserts Dr. Shapiro's opinion should be afforded lesser weight because

she did not review the medical record.  (Dkt. No. 11 at 21 [Pl.'s Mem. of Law].)

However, a consultative examiner is not required to obtain or review laboratory reports

or treatment records.  *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (the ALJ did

not commit reversible error for relying on the opinion of a consultative examiner where

the examiner did not review plaintiff's record, however he personally examined plaintiff

and reached conclusions consistent with the objective medical evidence in the record);

*see Genito v. Comm'r of Soc. Sec.,* No. 7:16-CV-0143, 2017 WL 1318002, at *9
(N.D.N.Y. Apr. 7, 2017) ("there is no legal requirement that opinion sources must have
access to a full and complete record in order for their opinions to be sufficient to
constitute substantial evidence"); *see* 20 C.F.R. § 404.1519n(c)(1)-(7) (elements of a
complete consultative examination).  Therefore, Plaintiff's argument that the
consultative examiner's opinion should be afforded less weight because she did not
review the medical record fails.

Plaintiff next asserts Dr. Shapiro's opinion should have been afforded less weight
because she did not define the term "moderate."  (Dkt. No. 11 at 21 [Pl.'s Mem. of
Law].)  To be sure, Dr. Shapiro did not define the term moderate; however, the Second
Circuit has consistently held that having a moderate limitation in a mental functional
area does not preclude the ability to do basic work activities.  *Zabala v. Astrue*, 595 F.3d
402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that
she had anything more than moderate limitations in her work-related functioning, and
most reported less severe limitations."); *see Whipple v. Astrue*, 479 F. App'x. 367, 370
(2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused
moderate limitations in social functioning ultimately supported the ALJ's determination
that plaintiff was capable of performing work that involved simple tasks and allowed for
a low-stress environment); *see Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at
*6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested
by the medical evidence, including plaintiff's moderate limitation in the ability to learn
new tasks, perform complex tasks, make appropriate decisions, relate adequately with
others, and deal with stress. These limitations are incorporated into the RFC, which

limits plaintiff to simple routine tasks in a low stress, low contact environment.").

Therefore, Dr. Shapiro's opinion of moderate limitations did not require further definition.

Next, Plaintiff attempts to equate Dr. Shapiro's use of the term "moderate" to Dr. Ispahani's use of "moderate" as defined on the form to argue Plaintiff is disabled. (Dkt. No. 11 at 16 [Pl.'s Mem. of Law].) To be sure, the ALJ stated Dr. Ispahani's opinion of "mild" and "moderate" limitations "appear[ed] to be relatively consistent" with the opinions of Dr. Shapiro and Dr. Juriga. (T. 28-29.) Plaintiff reasons that because the ALJ found the opinions of to be "relatively consistent," the ALJ should have found Plaintiff disabled based on vocational expert testimony that a person who is off task 15% of the workday would be unemployable. Plaintiff essentially attempts to fit a square peg into a round hole.

At the hearing, a vocational expert testified that an employer would not tolerate an employee who is "off task" more than 15% of the workday. (Dkt. No. 11 at 16 [Pl.'s Mem. of Law] referring to T. 63.) Plaintiff asserts, Dr. Ispahani's opinion that Plaintiff had "moderate" limitations in the area of concentration, persistence and pace equated to being off task 15% of the workday and therefore Plaintiff should ultimately be found disabled. (*Id.*) However, Dr. Ispahani did not opine Plaintiff would be "off task" 15% or more of her workday. The form completed by Dr. Ispahani provide a range for the term moderate of 11% to 25% of the workday. (T. 482.) Therefore, based on the vocational expert testimony, an employer would tolerate an employee being off task less than 15% of the workday, which also falls within the form's definition of moderate. Further, for the reasons outlined herein, the ALJ properly afforded Dr. Ispahani's opinion reduced weight and properly afforded Dr. Shapiro's opinion very significant weight. Overall, the

ALJ's mental RFC finding Plaintiff could perform simple, routine, repetitive tasks, was supported by Dr. Shapiro's opinion.

Plaintiff also asserts the ALJ erred in her evaluation of Dr. Juriga's opinion claiming it was "stale" and accusing the doctor of "cherry picking" the record. (Dkt. No. 11 at 21 [Pl.'s Mem. of Law].) Plaintiff did not cite to any evidence postdating the opinions of Drs. Shapiro or Juriga that would establish a material deterioration of her condition. *See Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014).

Further, there is no evidence that Dr. Juriga "cherry picked" the record. To be sure, Dr. Juriga cited one treatment notation from May 2014 in support of his determination. (T. 70, referring to T. 322.) However, the May 2014 notation was consistent with other mental health treatment notations indicating that Plaintiff benefitted from medication, was doing "okay" except for sleep problems, and doing well on medication until she stopped taking them due to her pregnancy. (T. 319, 320, 321.)

Overall, the ALJ properly weighed the medical opinion evidence in the record. In assessing Plaintiff's treating psychiatrist, Dr. Ispahani, the ALJ provided good reasons for affording his opinion less than controlling weight. Although the ALJ's decision did not explicitly lay out all the factor's in 20 C.F.R. §§ 404.1527(c) and 416.927(c), it is clear from her decision that she adhered to them. The ALJ also properly assessed the opinions of the consultative examiners. The ALJ cited to substantial evidence in the record to support her determinations. Plaintiff provided evidence in the record in support of her position; however, even if substantial evidence supports a plaintiff's position, an ALJ's findings must be sustained if supported by substantial evidence. *Wojciechowski,* 967 F.Supp.2d at 605.

**B. Credibility Determination**

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other

symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

The ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully consistent with the overall evidence in the record.  (T. 27.)  The ALJ outlined Plaintiff's testimony, her treatment, her activities of daily living, and medical opinions concerning Plaintiff's limitations.  (T. 26-28.)

Plaintiff asserts the ALJ improperly focused on her activities of daily living, failed to consider the statements of "all the doctors," and failed to properly consider the statement from Plaintiff's mother.  (Dkt. No. 11 at 21-24 [Pl.'s Mem. of Law].)[3]  The ALJ's credibility determination was proper and supported by substantial evidence.

The ALJ properly relied on Plaintiff's activities of daily living in making a credibility determination.  Plaintiff asserts the ability to care for children does not equate with the ability to perform a full time job.  (Dkt. No. 11 at 28 [Pl.'s Mem. of Law].)  However, the ALJ did not conclude Plaintiff was not disabled because she could care for her children. Here, the ALJ properly noted Plaintiff could care for her two small children on her own

---

[3]    Plaintiff refers to a statement from "claimant's daughter."  (Dkt. No. 11 at 22 [Pl.'s Mem. of Law].)  This appears to be a typo.  The statement Plaintiff is referring to was provided by Plaintiff's mother.  (T. 213-215.)  The statement asked for the provider's relationship to the claimant, to which the person wrote "daughter."  (T. 213.)  However, it is clear the person completing the form is Plaintiff's mother.  At the time of the hearing Plaintiff's daughters were 19 months and eight years old.  (T. 44.)

as indication that Plaintiff's assertions regarding the limiting effects of her impairments were not as severe as alleged.  (T. 26); *see Tricarico v. Colvin*, 681 F. App'x 98, 102 (2d Cir. 2017) (ALJ noted plaintiff cared for his young children while his wife worked as part of his credibility analysis).  Plaintiff further testified she was capable of maintaining her apartment, preparing meals, attending therapy sessions, maintaining regular check-ups with her parole officer, and would like to return to school for cosmetology.  (T. 26-27.) Here, the ALJ properly considered Plaintiff's testimony that she was capable of caring for two small children and other activities, in support of her determination that Plaintiff was not entirely credible.

Plaintiff asserts the ALJ failed to properly consider the statements of "all of the doctors" and the statement from Plaintiff's mother.  (Dkt. No. 11 at 28-29 [Pl.'s Mem. of Law].)  However, Plaintiff does not provide any further analysis to support this argument.  Instead Plaintiff asserts the statements from Dr. Ispahani and Plaintiff's mother enhance her credibility.  (*Id.* at 23.)  As stated herein, under the substantial evidence standard of review, Plaintiff cannot merely argue evidence in the record could support her position.  *See Brault*, 683 F.3d at 448.  Although Dr. Ispahani's statement and the mother's statement may support Plaintiff's assertions, substantial evidence in the record nonetheless supported the ALJ's credibility determination.

Here, the ALJ properly explained her reasoning for finding Plaintiff not fully credible.  The ALJ relied on Plaintiff's ability to interact appropriately with medical professionals, her successful completion of substance abuse treatment, her good response to talk therapy and psychotropic medications, and her wide range of daily activities, including caring for her children.  This Court cannot second guess an ALJ's

credibility determination where the ALJ gave good reasons for her determination and that decision was supported by substantial evidence.  *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206 (N.D.N.Y. 2012).

Overall, the ALJ properly assessed and weighed the medical opinion evidence in the record and her determination was supported by substantial evidence.  The ALJ was not obligated to recontact any sources for further clarification or information because the record contained sufficient information for the ALJ to provide a determination.  The ALJ also properly evaluated Plaintiff's credibility and her credibility determination was supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        April 6, 2018

William B. Mitchell Carter
U.S. Magistrate Judge